**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ALLSTATE INDEMNITY COMPANY, | |
| Plaintiff | CIVIL ACTION NO. 3:04-CV-0808 |
| v. | |
| DENNIS J. CORONITI, | (JUDGE CAPUTO) |
| Defendant | |

**MEMORANDUM**

In this non-jury trial, the major issue was whether the doctrine of estoppel compels a finding that the Plaintiff is estopped from claiming that total stacked underinsured motorist ("UIM") coverage is anything but $400,000[1].

This memorandum shall constitute the findings of fact and conclusions of law required in non-jury trials. See Fed. R. Civ. P. 52(a).

**DISCUSSION**

On April 13, 2004, Allstate Indemnity Company ("Allstate") filed a Civil Action Complaint for Declaratory Judgment pursuant to 28 U.S.C. § 2201, in the United States District Court for the Middle District of Pennsylvania, wherein Allstate sought a declaration of rights, duties and liabilities under an automobile policy of insurance issued by Allstate to Dennis J. Coroniti ("Coroniti") for an automobile accident that occurred on October 3, 2000.

---

[1]Other issues in this case were disposed of by Memorandum and Order of April 6, 2005. (Doc. 53.) Defendant has also asserted the doctrine of laches and unclean hands.

1

On May 5, 2004, Coroniti filed an Answer with Affirmative Defenses to Allstate's Declaratory Judgment Complaint.

Allstate issued to Coroniti policy number 618048987, an automobile liability policy, for the relevant time period from April 12, 2000 to October 12, 2000. Coroniti had initially purchased automobile insurance from Allstate in 1988.

On or about October 3, 2000, Coroniti was operating a 1998 Chevrolet Suburban when he was involved in a motor vehicle accident and suffered personal injuries. Coroniti initiated a civil cause of action against the tortfeasor involved in the motor vehicle accident wherein pleadings were filed and discovery was initiated. *See Coroniti v. Kumor* (C.P., Lackawanna Cty., No. 02-CV-2820).

On May 2, 2002, John Mulcahey, Esquire, Mr. Coroniti's counsel, had a telephone conference with Donna Kifer, an employee of Plaintiff, in which she advised Mr. Mulcahey, there were four vehicles on the policy each with $100,000 in UIM coverage, which meant to him there was $400,000 in coverage.

By letter dated May 31, 2002, Mr. Mulcahey notified Allstate that he was pursuing an UIM claim against Allstate from the October 3, 2000 accident. (Defendant's Ex. 4.) On June 3, 2002, Coroniti's claim for underinsured motorist coverage was assigned to Casualty Negotiator Sandra Levan who had been employed by Allstate for eleven years and exclusively handled UIM claims since May 1999. On June 3, 2002, Ms. Levan reviewed computer information and concluded the UIM limits were $400,000 – $100,000 stacked by four vehicles – as confirmed in her claim notes on June 3, 2002 and June 7, 2002. Ms. Levan then requested a certified copy of the declaration sheet and policy. On June 7, 2002,

2

Ms. Levan memorialized in her claim note, "Dec and policy rec'd - confirms SU100/300, stk x 4 vhs, full tort."

On June 7, 2002, Ms. Levan requested a certified copy of Policy Number 618048987 and the Declarations Page.  By letter dated June 12, 2002, Ms. Levan forwarded the certified copy of Policy Number 618048987 and Declarations Page for the time period from April 12, 2000 to October 12, 2000, to Mr. Mulcahey.  Ms. Levan forwarded a Suit Report to defense counsel stating, "We have UIM cvg 100/300 stk x 4 vhs."

Mr. Mulcahey reviewed the Declarations Page and the Policy and determined independently of the statements of Ms. Kifer and Ms. Levan that the coverage was $400,000.

By letter dated September 29, 2003, Coroniti's counsel made a demand for Allstate to tender its $400,000 UIM policy within thirty (30) days.  The September 29, 2003 demand to Allstate's counsel included expert reports of an economic expert, Dr. Jonathan Cunitz dated September 25, 2003; a vocational expert, Carole Fisher dated September 9, 2003 and, a medical expert, Dr. Gentilezza dated August 15, 2003.

By letter dated October 7, 2003, Ms. Levan responded to the September 29, 2003 letter in which she acknowledged receipt of the demand for the $400,000 policy limits and stated that because the investigation was ongoing, she was unable to make an offer of settlement. On October 18, 2003, Coroniti forwarded correspondence to adjuster, Sandra Levan, renewing the demand for the $400,000 UIM policy.  Ms. Levan responded by correspondence dated October 24, 2003, advising that she would have defense counsel respond.

On February 20, 2004, Allstate representative Michael Spengler reviewed the file and approved increasing the reserve on the claim to $400,000 and directed the claim to Theodore Hodgins for review and approval. On or about February 22, 2004, Allstate representative Theodore Hodgins reviewed the file materials at the home office. On February 24, 2004, Allstate first notified Coroniti's counsel that Allstate believed coverage was $200,000 and extended an offer in that amount. By letter dated March 1, 2004, Coroniti's counsel disagreed with Allstate's position on coverage.

Coroniti incurred the following expenses for experts to support his UIM claims:

  (a)   $900.00 to obtain the initial report from Dr. Gentilezza;

  (b)   $2,000.00 for the deposition fee for Dr. Gentilezza's deposition;

  (c)   $5,853.76 in costs for Dr. Cunitz;

  (d)   $200.00 to obtain a supplemental report from Dr. Gentilezza; and,

  (e)   $1,750.00 to obtain a report from Carol Fisher.

The issue at trial was whether the failure to correct Defendant's erroneous interpretation of the coverage until the February 24, 2004 letter (1) constituted a misrepresentation of pertinent benefits and coverages in violation of 31 Pa. Code § 146.4(a)[2] and (2) whether it induced the Defendant to believe that he was entitled to $400,000 in stacked UIM insurance. Further, was the Defendant justified in relying on the Plaintiff's silence in view of Plaintiff's role as an insurer.

---

[2]31 Pa. Code § 146.4(a) provides:
"An insurer or agent may not fail to fully disclose to first-party claimants pertinent benefits, coverages or other provisions of an insurance policy or insurance contract under which a claim is presented."

The burden is on the Defendant to establish the presence of "such conduct on the part of the insurer as would, if the insurer were not estopped, operate as a fraud on some party who has taken or neglected to take some action to his own prejudice in reliance thereon. Accordingly, an insurer is not estopped to deny liability on a policy where the plaintiff was not misled by the [insurer's] conduct." *Wasilko v. Home Mut. Cas. Co.,* 232 A.2d 60, 63 (Pa. Super. 1967) (citing 16 Appleman, Insurance Law § 9088 at 626). The elements of the doctrine of estoppel have been stated as follows:

> (1) an inducement, whether by act, representation, or silence when one ought to speak, that causes one to believe the existence of certain facts; (2) justifiable reliance on that inducement; and (3) prejudice to the one who relies if the inducer is permitted to deny the existence of such facts. *Chem. Bank. v. Dippolito*, 897 F.Supp. 221, 224 (E.D. Pa. 1995) (*citing Zivari v. Willis*, 611 A.2d 293, 295 (Pa. Super. Ct. 1992)).

I will deal with these elements applying them to the facts as I find them in this case.

A.  <u>Estoppel</u>

   1. Inducement

Ms. Levan was mistaken as to the amount of UIM coverage from the time she received notice that a claim would be made (see Defendant's Ex. 9 - which shows her mistake) until the mistake was discovered by Plaintiff in February 2004.

From Mr. Mulcahey's standpoint, the circumstances are quite different. First, Mr. Mulcahey testified that in May 2002 he had a telephone conference with Ms. Kifer, an employee of Plaintiff, in which she advised him there were four vehicles on the policy with UIM coverage which meant to him $400,000 in coverage. I find Mr. Mulcahey credible. Ms.

5

Kifer has no independent recollection of the call at which other things were discussed, and her testimony was that being a detail person, the fact that she did not record that conversation in her notes meant the conversation did not occur. Her lack of independent recollection is not inconsistent with Mr. Mulcahey's testimony, and I find the conversation related by Mr. Mulcahey took place on May 2, 2002.

In June 2002, Ms. Levan sent the declaration pages to Mr. Mulcahey who concluded, albeit erroneously, the coverage was $400,000. Normally, it would be fair to infer that his conclusion was aided by the coverage information he received from Ms. Kifer. However, Mr. Mulcahey testified that no matter what he was told by Ms. Kifer and Ms. Levan, he would have independently determined the coverage was $400,000. (P. 95, Testimony of John M. Mulcahey, Esq. Test., 95 January 5, 2006)

In September 2003, Mr. Mulcahey wrote a letter to Ms. Levan demanding the payment of the policy limits of $400,000. Mr. Levan wrote back on October 7, 2003 acknowledging the demand of policy limits of $400,000. This was not a confirmation of policy limits of $400,000, but even if it were, it was a continuation of Ms. Levan's mistaken belief that the policy limits were $400,000. 31 Pa. Code § 146.4(a) requires an insurer to "fully disclose the pertinent benefits, coverages and other provisions of an insurance policy or insurance contract under which a claim is presented." Given this direction, simply sending the declaration page is not enough. It is difficult to argue that Mr. Mulcahey should not have misread the coverages when Ms. Levan, an eleven year employee who dealt with claims and the coverages pertinent thereto, was mistaken as to the coverage as well. When Ms. Levan received Mr. Mulcahey's September 29, 2003 letter indicating his belief that the coverage

6

was $400,000, she should have rechecked to be sure.  Notwithstanding this duty to speak, her failure to do so did not "cause Mr. Mulcahey to believe" that the coverage was $400,000.  Mr. Mulcahey already believed it from his conversation with Ms. Kifer and from his own reading of the policy including the declaration pages in June of 2002.  More importantly, he testified that he reached the determination of $400,000 in coverage independently of his conversations with Ms. Kifer and Ms. Levan.  Therefore, I find that his conversation with Ms. Kifer, the interim silence, and the October 7, 2003 letter were not inducements.

      2.  Justifiable Reliance

Since Mr. Mulcahey independently determined that there was $400,000 in coverage, it cannot follow that he relied on the representations of Ms. Kifer and Ms. Levan, and the Plaintiff's silence from June 2002 to February 2004.  Mr. Mulcahey testified that no matter what he was told by Plaintiff's employees, Ms. Kifer and Ms. Levan, he still would have determined that coverage was $400,000.  Given Mr. Mulcahey's testimony, I cannot conclude that he relied on what he was told, much less was induced by it.

I therefore find there was no justifiable reliance on the representations of plaintiff.

      3.  Prejudice

Since the first two elements were not met, I do not reach the issue of prejudice.

B.  <u>Laches</u>

Defendant argues that Plaintiff is guilty of laches, and as a result defendant is entitled

7

to a declaration that coverage is $400,000.

In order to succeed on the doctrine of laches, Defendant must establish (1) a delay arising from plaintiff's failure to exercise due diligence; and (2) prejudice to defendant as a result of the delay. *Koter v. Cosgrove*, 844 A.2d 29, 34 (Pa. Comm. 2004). Due diligence is determined on the basis of what plaintiff "might have known by use of information within its reach." *Stilp v. Hafer,* 718 A.2d 290, 294 (Pa. 1998).

1. Delay occasioned by the Plaintiff's lack of due diligence.

The delay was not occasioned by Plaintiff's lack of due diligence. The delay was occasioned by Defendant's failure to read and recognize the proper policy coverage. (See Memorandum of April 6, 2005, Doc. 6 at 6 -11.)

2. Prejudice

Having determined that there was no delay occasioned by Plaintiff's lack of due diligence, I need not reach the issue of prejudice.

C.  Unclean Hands

Defendant also argues that he is entitled to relief as a result of lack of clean hands on the part of Plaintiff. In order to succeed pursuant to the doctrine of unclean hands, Defendant must establish that Plaintiff (1) is a party seeking affirmative relief; (2) is guilty of conduct involving fraud, deceit, unconscionability or bad faith; (3) directly related to the matter at issue; and (4) that injures the other party and affects the balance of equities between the litigants. *Dickler v. Cigna Prop. & Cas. Co.*, 1996 U.S. Dist. Lexis 11156, at *15-16 (E.D. Pa. July 31, 1996).

Defendant argues that Plaintiff's conduct is its failure for almost a two year period to disclose the amount of coverage to the Defendant. See 31 Pa. Code §§ 146.4, 146.5(c) and 40 P.S. § 1171.4. Plaintiff's mistaken belief as to coverage does not rise to the level of bad faith. While it may be true that Plaintiff should have accurately notified Defendant of the amount of coverage (see Memorandum, Doc. 6 at 6-7), its conduct does not amount to bad faith. Having determined the second element has not been met, I do not reach the remaining elements.

Defendant has not established that Plaintiff acted with unclean hands.

Based on the foregoing findings of fact and conclusions of law, all of which are integrated into this Memorandum, judgment will be entered for the Plaintiff.

An order follows.

Date May 19, 2005                     s/ A. Richard Caputo
                                      A. Richard Caputo
                                      United States District Judge

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ALLSTATE INDEMNITY COMPANY, | |
| Plaintiff | CIVIL ACTION NO. 3:04-CV-0808 |
| v. | |
| DENNIS J. CORONITI, | (JUDGE CAPUTO) |
| Defendant | |

### **ORDER**

  AND NOW this 19th day of May, 2006, Judgment is entered for the Plaintiff and against the Defendant.

              <u>s/ A. Richard Caputo</u>
              A. Richard Caputo
              United States District Judge